## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

STEPHEN BUSHANSKY,

      Plaintiff,

v.

COREPOINT LODGING INC.,
KEITH A. CLINE,
JAMES R. ABRAHAMSON,
GLENN ALBA,
JEAN M. BIRCH,
ALAN J. BOWERS,
GIOVANNI CUTAIA,
ALICE E. GOULD,
B. ANTHONY ISAAC,
BRIAN KIM,
DAVID LOEB, and
MITESH B. SHAH,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action against CorePoint Lodging Inc. ("CorePoint" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange

Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by a joint venture between Highgate Holdings ("Highgate") and Cerberus Capital Management, L.P. ("Cerberus") (the "Joint Venture") through their affiliates Cavalier Acquisition Owner LP ("Cavalier") and Cavalier MergerSub LP ("Merger Sub") (the "Proposed Transaction").

2.      On November 8, 2021, CorePoint issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement"), dated November 6, 2021, to sell CorePoint to the Joint Venture.  Under the terms of the Merger Agreement, each CorePoint stockholder will be entitled to receive $15.65 in cash, plus (i) if applicable, incremental cash consideration per share in certain circumstances if CorePoint resolves prior to the closing certain previously disclosed tax proceedings (the "IRS Matter"), less (ii) the per share amount of any dividends paid to common stockholders between the date of the Merger Agreement and the effective time of the merger, for each CorePoint share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $1.5 billion.

3.      On January 14, 2022, CorePoint filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that CorePoint stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) CorePoint's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); and (iii) potential conflicts of interest faced by the Company's other financial advisor, Hodges Ward Elliott, LLC ("HWE").  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, CorePoint's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  CorePoint operates and maintains 14 of its hotels in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of CorePoint common stock.

9.      Defendant CorePoint is a Maryland corporation with its principal executive offices located at 125 E. John Carpenter Freeway, Suite 1650, Irving, Texas 75062.  CorePoint is a self-

administered lodging real estate investment trust ("REIT") strategically focused on the midscale and upper midscale lodging segments. The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "CPLG."

10.     Defendant Keith A. Cline ("Cline") has been President and Chief Executive Officer ("CEO") of the Company since May 2018, and a director since May 2017.

11.     Defendant James R. Abrahamson ("Abrahamson") has been a director of the Company since April 2018.

12.     Defendant Glenn Alba ("Alba") has been a director of the Company since April 2018.

13.     Defendant Jean M. Birch ("Birch") has been a director of the Company since September 2018.

14.     Defendant Alan J. Bowers ("Bowers") has been a director of the Company since April 2018.

15.     Defendant Giovanni Cutaia ("Cutaia") has been a director of the Company since April 2018.

16.     Defendant Alice E. Gould ("Gould") has been a director of the Company since September 2018.

17.     Defendant B. Anthony Isaac ("Isaac") has been a director of the Company since April 2018.

18.     Defendant Brian Kim ("Kim") has been a director of the Company since April 2018.

19.     Defendant David Loeb ("Loeb") has been a director of the Company since April 2018.

20.     Defendant Mitesh B. Shah ("Shah") has been Chairperson of the Board and a director of the Company since April 2018.

21.     Defendants identified in paragraphs 10 to 20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     Highgate is a leading real estate investment and hospitality management company with over $15 billion of assets under management.  Highgate has a 30-year track record as an investment manager, operating partner, and developer for REITs, private equity firms, sovereign wealth funds, high net worth individuals, and other institutional investors.  With a particular focus in hospitality real estate, Highgate's portfolio includes over 350 owned and/or managed hotels comprising over 65,000 rooms across the United States, Europe, Latin America, and the Caribbean.  Highgate's capabilities extend to adjacent real estate verticals including multifamily, short-term rentals, and diversified healthcare real estate, as well as investments in real estate-linked securities, technology platforms, and hospitality-related operating businesses.  Highgate maintains corporate offices in New York, Dallas, London, Miami, Seattle, and Waikiki.

23.     Founded in 1992, Cerberus is a global leader in alternative investing with over $55 billion in assets across complementary credit, private equity, and real estate strategies.  Cerberus invests across the capital structure where its integrated investment platforms and proprietary operating capabilities create an edge to improve performance and drive long-term value.  Cerberus' tenured teams have experience working collaboratively across asset classes, sectors, and geographies to seek strong risk-adjusted returns for its investors.

24.     Cavalier is a Delaware limited partnership formed by the Joint Venture.

25.     Merger Sub is a Delaware limited partnership and a direct or indirect wholly owned

subsidiary of Cavalier.

## SUBSTANTIVE ALLEGATIONS

### Company Background

26.     CorePoint is the only pure-play publicly traded U.S. lodging REIT strategically focused on the ownership of midscale and upper-midscale select-service hotels.  CorePoint owns a geographically diverse portfolio in attractive locations primarily in or near employment centers, airports, and major travel thoroughfares.  All of the Company's hotels currently operate under the Wyndham Hotels & Resorts, Inc.'s ("Wyndham") highly recognizable La Quinta brand.  There are over 900 La Quinta hotels worldwide.  As of September 30, 2021, CorePoint owned interests in approximately 160 hotels with approximately 22,000 rooms.

27.     The Company is a select-service hotel owner, which means that its hotels provide limited amenities while the Company focuses on providing clean and convenient hotel lodging at lower price points.  CorePoint hotels generally offer limited food offerings (such as free buffet style breakfast), free internet access, free parking and a lower average daily rate ("ADR") than a full-service hotel which may offer restaurants, banquet and meeting facilities, spa services, and other amenities.

28.     On November 8, 2021, the Company announced its third quarter 2021 financial results, including net income of $17 million, or $0.28 earnings per diluted share, as compared to a net loss of $8 million, or $0.14 loss per share in the prior year period.  Total revenues for the quarter were $142 million, improved from $107 million in the same period of 2020.  Adjusted EBITDAre of $34 million was also an improvement from Adjusted EBITDAre of $8 million in the corresponding quarter of the prior year.  Adjusted FFO attributable to common stockholders were $29 million, compared with zero Adjusted FFO in the year ago quarter.  The Company also sold 15 non-core hotels for a combined gross sales price of approximately $96 million during the

quarter, and repaid $102 million in total debt.

**The Proposed Transaction**

29.     On November 8, 2021, CorePoint issued a press release announcing the Proposed

Transaction.  The press release states, in relevant part:

> IRVING, Texas, Nov. 08, 2021 -- CorePoint Lodging Inc. (NYSE: CPLG) ("CorePoint" or the "Company"), a pure play select-service hotel owner strategically focused on the midscale and upper-midscale segments, today announced that it has entered into a definitive agreement to be acquired through a joint venture between affiliates of Highgate and Cerberus Capital Management, L.P. ("Cerberus").
>
> Under the terms of the merger agreement, Highgate and Cerberus will acquire all outstanding shares of CorePoint common stock in an all-cash transaction valued at approximately $1.5 billion based on the $15.65 per share consideration, which reflects the assumption of current net debt and a $160 million buyer liability reserve for the Internal Revenue Service ("IRS") matter detailed below.  This price represents a premium of approximately 42% to CorePoint's closing share price on July 13, 2021, the last trading day prior to the Company's public announcement of its strategic alternatives process.
>
> In addition to the $15.65 per share payable in cash at closing, CorePoint stockholders may receive incremental cash consideration per share pending timely resolution of the previously disclosed tax proceedings with the IRS related to an ongoing audit of CorePoint entities, which began prior to the Company's 2018 spin-off from La Quinta Holdings, Inc.  The amount of any potential additional cash consideration payable to CorePoint stockholders will be calculated based on the amount, if any, by which the settlement amount is less than a buyer liability reserve of $160 million agreed to by the parties.  The Company received a settlement offer from the IRS with respect to the IRS matter on November 5, 2021, and expects to accept that offer and enter into an agreement with the IRS this week.  The settlement offer provides for total payments by the Company of approximately $89.6 million plus statutory interest through the date of payment.  Pursuant to this settlement offer, the Company estimates the total payment amount pursuant to the settlement will be approximately $155 million.  As such, the Company currently expects that the amount of any such additional consideration will likely be approximately $0.10 per share.  There can be no assurances that any additional consideration will be received by the Company's stockholders.
>
> Keith Cline, President and Chief Executive Officer of CorePoint, said, "Over the past few years, CorePoint has been executing on a disciplined asset disposition strategy that has transformed the Company's portfolio and created substantial value.  This transaction continues our strategy of maximizing value and represents

a compelling opportunity to deliver immediate and certain cash value to our stockholders. Our portfolio has accomplished a great deal over the past several years, and I would like to thank the entire team at CorePoint along with Wyndham, especially their operations field leaders, general managers and hotel staff, for the dedication, hard work and commitment to CorePoint."

Mitesh Shah, CorePoint's Chairman of the Board, added, "The CorePoint Board, in consultation with our independent financial and legal advisors, conducted a comprehensive review of strategic alternatives and unanimously determined that this transaction maximizes value for our stockholders. The resilience and achievements of CorePoint's entire team have unlocked substantial value through a deliberate, non-core disposition strategy, and today's all-cash sale represents a successful culmination of these efforts."

"Highgate has tremendous respect for CorePoint and its highly experienced team, having observed the Company strengthen, refine and cultivate a leading portfolio of select service hotels," said Mahmood Khimji, Co-Chairman of Highgate. "We are thrilled to partner with our friends at Cerberus on another exciting transaction, through which Highgate will continue to enhance its capabilities in the select service space. We look forward to collaborating with the many associates and stakeholders involved towards a successful closing, and to working closely with the Wyndham Hotels team as we embark on the next chapter for this portfolio."

Tom Wagner, Head of North American Real Estate at Cerberus, commented: "Since separating from La Quinta Holdings, Inc. in 2018, the CorePoint management team has done an excellent job running the business, navigating the unprecedented COVID-19 pandemic, and strategically repositioning its portfolio. Alongside Highgate, we are excited for the opportunity to build on these positive strides and establish the Company's next chapter of growth as a private company."

**Timing and Approvals**

The transaction is expected to close in the first quarter of 2022, subject to the approval of CorePoint's stockholders and the satisfaction of other customary closing conditions. There is no financing condition to the transaction.

In connection with the transaction, affiliates of Blackstone Inc. which own approximately 30% of CorePoint's total shares outstanding, have entered into a voting agreement under which they have agreed to vote all of their shares in favor of the transaction.

Upon successful completion of the transaction, CorePoint's common stock will no longer be listed on the New York Stock Exchange, and the Company will be privately owned.

**Third Quarter 2021 Earnings**

In light of the pending transaction with Highgate and Cerberus, CorePoint will not hold an earnings conference call for the third quarter of 2021. The Company separately released its financial results for the third quarter this morning.

**Advisors**

J.P. Morgan Securities LLC is serving as lead financial advisor to CorePoint, Hodges Ward Elliott, LLC as co-advisor, and Simpson Thacher & Bartlett LLP as legal counsel to CorePoint.

Deutsche Bank Securities Inc. is serving as financial advisor to Highgate and Cerberus. Additionally, Deutsche Bank and Bank of Montreal provided a debt financing commitment to Highgate and Cerberus on this transaction. Latham & Watkins LLP and Kirkland & Ellis LLP acted as legal counsel to Highgate and Cerberus.

## **Insiders' Interests in the Proposed Transaction**

30.     CorePoint insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of CorePoint.

31.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with the Joint Venture. Pursuant to the Merger Agreement, each outstanding share of CorePoint restricted stock, restricted stock units ("RSUs"), or deferred stock units will vest and convert into the right to receive the Merger Consideration. The estimated aggregate amount that would be realized by CorePoint's non-employee directors in settlement of their RSUs and deferred stock units in accordance with the merger agreement is $6,470,899.40. It is also anticipated that additional grants of deferred stock units will be granted to non-employee directors on or around December 31, 2021, with an estimated aggregate amount of $132,571.15. The following table summarizes the value of cash payments CorePoint's named executive officers stand to receive

(including accelerated vesting of performance-based restricted stock units ("PSUs")) with respect to their equity compensation awards upon closing of the merger:

| Name | PSUs | | Restricted Stock | | Stock-Based Dividend Equivalent Rights | | Cash-Based Dividend Equivalent Rights |
|---|---|---|---|---|---|---|---|
| | Number (#) | Value ($) | Number (#) | Value ($) | Number (#) | Value ($) | Value ($) |
| Keith A. Cline | 505,698 | 7,914,174 | 328,113 | 5,134,968 | 11,457 | 179,302 | 140,268 |
| Daniel E. Swanstrom II | 193,860 | 3,033,909 | 107,529 | 1,682,829 | 3,668 | 57,404 | 65,959 |
| Mark M. Chloupek | 163,067 | 2,551,999 | 107,127 | 1,676,538 | 4,890 | 76,529 | 53,436 |

32.     Moreover, the Company has approved (i) the acceleration of certain PSUs held by defendant Cline, Messrs. Mark Chloupek, Howard Garfield and Dan Swanstrom (collectively, the "Covered Executives"), and (ii) the acceleration of payment of 2021 annual bonuses for the Covered Executives.   The number of 2020 PSUs to be accelerated and settled, at maximum performance, for each of the Covered Executives is as follows: 824,610 for defendant Cline, 247,384 for Mark Chloupek, 92,357 for Howard Garfield, and 247,384 for Dan Swanstrom.   The amount of the 2021 bonuses to be paid to each of the Covered Executives is as follows: $1,591,350 for defendant Cline, $824,000 for Mark Chloupek, $336,000 for Howard Garfield and $950,000 for Dan Swanstrom.

33.     Further, if they are terminated in connection with the Proposed Transaction, CorePoint's named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash (1) ($) | Equity (2) ($) | Perquisites/ Benefits (3) ($) | Tax Reimbursement (4) ($) | Total ($) (5) |
|---|---|---|---|---|---|
| Keith A. Cline | 4,972,969 | 13,368,712 | 117,523 | — | 18,459,203 |
| Daniel E. Swanstrom II | 2,018,750 | 4,840,101 | 37,571 | — | 6,896,422 |
| Mark M. Chloupek | 1,751,000 | 4,358,502 | 81,682 | $      0 | 6,191,184 |

## The Proxy Statement Contains Material Misstatements or Omissions

34.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to CorePoint's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

35.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) CorePoint's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, J.P Morgan; and (iii) potential conflicts of interest faced by HWE.

***Material Omissions Concerning CorePoint's Financial Projections***

36.     The Proxy Statement omits material information regarding the Company's financial projections.

37.     For example, with respect to the Company's financial projections, the Proxy Statement fails to disclose the line items underlying the Company's: (i) Hotel Adjusted EBITDAre; (ii) Adjusted EBITDAre; and (iii) Unlevered Free Cash Flows.

38.     The omission of this information renders the statements in the "Financial Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's Financial Analyses***

39.     The Proxy Statement fails to disclose material information concerning J.P. Morgan's financial analyses.

40.     The Proxy Statement describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the descriptions of J.P. Morgan's fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses.

Without this information, as described below, CorePoint's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

41.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by J.P. Morgan.

42.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 9.50% to 10.50%; (ii) CorePoint's net debt and other adjustments as of September 30, 2021; and (iii) the number of fully diluted outstanding Company shares.

43.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44.     The omission of this information renders the statements in the "Opinions of J.P. Morgan Securities LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning HWE's Potential Conflicts of Interest***

45.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by one of the Company's financial advisors, HWE.

46.     With respect to HWE, the Proxy Statement fails to disclose: (i) HWE's compensation for its engagement and the amount of its compensation contingent on consummation of the Proposed Transaction; and (ii) whether HWE has performed any past services for the Joint Venture or their affiliates and, if so, the compensation received by HWE for these services.

47.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

49.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of CorePoint will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

50.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

51.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented

13

and/or omitted material facts, including material information about CorePoint's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan, and potential conflicts of interest faced by HWE. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

54.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

56.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

57.     The Individual Defendants acted as controlling persons of CorePoint within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of CorePoint and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and

dissemination of the various statements which Plaintiff contends are false and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

60.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, CorePoint's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 2, 2022                    Respectfully submitted,

                                          /s/ *Richard A. Acocelli*
                                          Richard A. Acocelli
                                          **WEISSLAW LLP**
                                          305 Broadway, 7th Floor
                                          New York, NY 10007
                                          Telephone: (212) 682-3025
                                          Facsimile: (212) 682-3010
                                          Email: racocelli@weisslawllp.com

                                          *Attorneys for Plaintiff*